UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LYNN KLEIMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:17CV2278HEA |
| ) | |
| KINGS POINT CAPITAL ) | |
| MANAGEMENT, LLC and ) | |
| JEFFREY BATES, ) | |
| ) | |
| Defendants. ) | |

## **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Transfer Venue to the Eastern District of New York Pursuant to 28 U.S.C. §1404(a) [Doc. No. 21]. Plaintiff opposes the motion. For the reasons set forth below, the Motion is granted.

### **Facts[1]**

Plaintiff Lynn Kleiman ("Plaintiff") is a resident of St. Louis County, Missouri. Plaintiff's father and mother, Ralph and Ora Levine (collectively, "the Levines"), lived in St. Louis County until their deaths in 2013.

Defendant Kings Point Capital Management L.L.C. ("KPCM") is a

---

[1] The recitation of facts is set forth for the purposes of this Opinion, Memorandum and Order only; it in no way relieves any party of the necessary proof thereof in later proceedings.

Delaware[2] limited liability company with offices in Great Neck, New York, and in Brentwood, Tennessee. KPCM is a financial services company that manages investment portfolios and provides financial planning services. Defendant Jeffrey Bates ("Bates") is a member, employee, and agent of KPCM and a citizen of Tennessee. KPCM and Bates are herein referred to as "Defendants" collectively.

Before their deaths, the Levines entrusted the financial management of "substantially all of their assets" to Defendants. Plaintiff assisted her parents, the Levines, in interacting with Defendants. The relationship between Defendants and Levines was centered around and governed by two Discretionary Investment Management Agreements, the first executed by the Levines on November 19, 2009 (the "2009 Agreement"), and the second executed by Plaintiff as attorney-in-fact for the Levines on July 12, 2013 (the "2013 Agreement"). Both the 2009 and 2013 Agreements includes a forum selection clause wherein the Levines agreed to resolve all disputes "arising out of, under or in connection with this Agreement ... in the appropriate federal or state court in the State of New York and in no other forum."

The Levines and Plaintiff "relied upon the express statements, representations and actions of the Defendants and entrusted to them the prudent

---

[2] The complaint states that KPCM is organized under Tennessee law; however, the affidavit of Jeffrey Bates attached to Defendants' memorandum in support of this motion states that KPCM is a Delaware L.L.C.

and responsible management of the financial assets of Ralph and Ora Levine in such a way as to effectuate their estate plan and their desires for distribution after the deaths of each of them." Accordingly, the Levines provided their Estate Plan documents to Defendants. The Estate Plan included The Ralph and Ora Levine Living Trust dated February 27, 1992 and six amendments to the Living Trust: the First Amendment to the Levine Loving Trust, dated December 9, 1996; the Second Amendment to the Levine Loving Trust, dated March 21, 2001; Third Amendment to the Levine Loving Trust, dated June 6, 2001; (d) Fourth Amendment to the Levine Living Trust, dated February 2, 2005; (e) Fifth Amendment to the Levine Living Trust, dated September 6, 2007; and (f) Sixth Amendment to the Levine Living Trust, dated October 22, 2009. The Estate Plan documents also included the Last Will of Ora Levine, which provided that all assets of Ora's estate at her death will pour over into the Living Trust, to be distributed pursuant to the terms of the Living Trust. The Sixth Amendment to the Living Will made specific distributions to Eric and Leonard Levine, two sons of Ralph and Ora Levine, and amended Article 12 to provide for remaining trust property to be given to Lynn Kleiman and her family. The Living Trust expressed the Levines' intent that after their deaths, specific bequests be made to grandchildren and Jewish Charities, and specific cash distributions of $50,000 and $25,000 be made to Eric and Leonard, respectively. Thereafter, the

"overwhelming bulk" of the Levine's estate was to be distributed to Plaintiff, making her the primary, identifiable beneficiary of the Estate Plan, something Defendants knew or should have known based on their relationship with the Levines.

Defendants recommended to the Levines, and to Lynn Kleiman, that most or all of the Levines' financial assets be places into three IRA Custodial Accounts (the "Custodial Accounts") with Pershing Advisor Solutions, L.L.C. ("Pershing"). The investments with Pershing were held in the Custodial Accounts pursuant to three "Traditional IRA Adoption Agreements" (the "IRA Agreements"). Defendants provided the IRA Agreements to the Levines, and at the recommendation of Defendants, the IRA Agreements were signed by Ralph Levine with Ora Levine named as primary beneficiary. Each IRA Agreement was subject to terms set forth in a "Traditional Individual Retirement Account (IRA) Adoption Agreement and Plan Document Traditional Individual Retirement Custodial Account" (the "Plan Document"). The Plan Document was prepared by Pershing, and Defendants had possession of and were familiar with the terms of the Plan Document. Defendants did not ensure that any contingent beneficiaries were named, and the Custodial Accounts' terms were such that the Ora's beneficiary designation would lapse upon her death. The Levines relied on Defendants' recommendations, as did Plaintiff as the primary beneficiary of the Living Trust.

Ralph Levine died on October 20, 2013.  At that time, the value of the assets in the Custodial Accounts was approximately $1.75 million.  Plaintiff "promptly" notified Defendants of Ralph's death.  Thereafter, Defendants did not ensure that the assets in the Custodial Accounts were transferred to Ora Levine, who was named as primary beneficiary of those accounts.  Nor did they ensure a beneficiary was designated for the Custodial Accounts in the event of Ora's death.  When Ora Levine died less than three weeks later, on November 8, 2013, the assets in the Custodial Accounts had not yet been distributed to her.  Following the terms of the Custodial Accounts and Plan Document, Pershing refused to distribute the assets in the Custodial Accounts to the Estate of Ora Levine or to the Living Trust.  Instead, Pershing distributed the assets to the Levines' children per stirpes, allocating one-third each to Plaintiff, Eric Levine, and Leonard Levine.

Plaintiff alleges that, as the primary beneficiary of the Estate of Ralph and Ora Levine, Defendants owed to her a duty to "effectuate the expressed intentions" of the Levines as reflected in the Estate Plan, and that they negligently breached said duty.  Plaintiff also alleges that Defendants owed her fiduciary duties which they breached.  Plaintiff alleges damages of not less than $3.5 million.

## Procedural Background

Plaintiff originally filed this action individually and as personal representative of the Estate of Ora Levine in the Circuit Court of St. Louis County,

Missouri. The case was removed to this Court based on diversity of citizenship between Plaintiff and Defendants. Plaintiff's original complaint alleged three counts against Defendants: negligence, breach of fiduciary duty, and breach of contract. The complaint alleged injury to the Estate of Ora Levine and to Lynn Kleiman, as a beneficiary of Ora and Ralph Levine's estate and living trust.

Defendant filed a Motion to Transfer [Doc. No. 9] based on a forum selection clause in the 2009 Agreement and 2013 Agreement between the Levines and Defendants. Plaintiff thereafter filed the First Amended Complaint (FAC) [Doc. No. 15] with Lynn Kleiman in her individual capacity as the sole Plaintiff, alleging two counts: negligence and breach of fiduciary duty. Plaintiff voluntarily dismissed the claims made as the personal representative of the Estate of Ora Levine, and a breach of contract claim was not included in the FAC. Defendant again filed a Motion to Transfer [Doc. No. 21], upon which the Court now rules.

## Discussion

The forum selection clause, which is the same in the 2009 and 2013 Agreements, states:

> Any action, suit or proceeding arising out of, under or in connection with this Agreement ... shall be brought and determined in the appropriate federal or state court in the State of New York and in no other forum.

Plaintiff argues that her claims are not subject to the forum selection clause because she was not a party to either the 2009 or 2013 Agreements, and her claims

are tort based, and therefore not subject to the contract's provision. Plaintiff also claims that transfer is not mandated by the forum selection clause.

The Eighth Circuit has not definitively ruled on whether state or federal law controls when the applicability of a forum selection clause is at issue, something the Circuit itself has noted. *Rainforest Cafe, Inc. v. EklecCo, L.L.C.*, 340 F.3d 544, 546 (8th Cir. 2003) ("In this case, both parties operate under the assumption that federal law controls the question of whether this forum selection clause applies. We are inclined to agree, but acknowledge that this appears to be an open question.") (internal citations omitted). In *Rainforest Cafe*, the parties did not argue that difference between applying state versus federal law "would result in a materially different outcome," so the Eighth Circuit applied federal law at the parties suggestions. *Id*.

Here, Defendants claim that regardless of which law is applied, the forum selection law applies to the tort claims. Plaintiff argues, under Missouri law, the forum selection clause is inapplicable to her tort-based claims. Upon examination of both and this Court finds that Plaintiff's claims are subject to the forum selection clause whether federal or state law is applied.

Both parties rely on federal law for the issues of whether the forum selection clause: (1) applies to a non-party or (2) mandates transfer. Accordingly, this Court applies federal law to those questions.

**Applicability of forum selection clause to tort-based claims**

Plaintiff argues that her claims of negligence and breach of fiduciary duty are "purely tort-based" and so the forum selection clause, as a contractual provision, does not apply. Alas, under both federal and state law, Plaintiff is incorrect.

**A. Federal Law**

Applying federal law, Plaintiff's claims as pleaded are subject to the forum selection clause. "Whether tort claims are to be governed by forum selection provisions depends upon the intention of the parties reflected in the wording of particular clauses and the facts of each case." *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 693 (8th Cir. 1997). The Eighth Circuit noted that "forum selection clauses referring to claims 'hereunder' or 'under the agreement' can be broad enough to cover contract-related tort claims." *Id*. at 694. The language in the 2009 and 2013 Agreements is sufficiently broad, covering all actions "arising out of, under or in connection with this Agreement." Even a sufficiently broad forum selection clause, however, is not enough to trigger a general rule of applicability to tort claims, due to the case-specific consideration of facts and contractual language.

In cases where the forum selection clause is broad, but not clear regarding tort claims, the Eighth Circuit considers three tests for determining whether the

forum selection clause will apply. *Id.* Generally, a forum selection clause will apply in the following cases: (1) where the tort claims ultimately depend on the existence of a contractual relationship between the parties; (2) where resolution of the tort claims relates to interpretation of the contract; or (3) where the tort claims involve the same operative facts as a parallel claim for breach of contract. *Id.* (*citing Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983); *Manetti–Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir. 1988); *Lambert v. Kysar*, 983 F.2d 1110, 1121–22 (1st Cir. 1993)).

Plaintiff argues that her claims do not depend on a contractual relationship because they are claims based solely on Defendants' "common law duty as reasonably competent financial advisors and a fiduciary duty" to ensure that the IRA funds ended up in the Living Trust, and thus subject to its beneficiary designations. She also argues that "she is not asserting a breach of contract claim or asking that any part of the Agreement[s] be construed or interpreted."

This Court finds the second and third *Terra Int'l.* tests most enlightening as applied to this case. Plaintiff doggedly argues that her claims are based purely in tort, citing the absence of a breach of contract claim or reference to the Agreements in her amended pleadings. "Strategic or artfully drawn pleadings, however, will not work to circumvent an otherwise applicable forum selection clause." *Terra Int'l.*, 119 F.3d. at 695. It is clear to this Court that Plaintiff's claims involve the

same operative facts as would a parallel claim for breach of contract, satisfying the third test. In fact, Plaintiff's original complaint pleaded a breach of contract claim along with the claims of negligence and breach of fiduciary duty, basing the three claims on the same set of facts. In addition, resolution of the tort claims of negligent performance and breach of fiduciary duty is necessarily intertwined with the duties and liabilities of Defendants that are expressed in the Agreements. For example, Section 1 of the Agreements describes the scope of services provided by Defendants; Section 4 describes the relationship between Defendants and custodians, such as Pershing. Notably, Section 6 dictates Defendant's liability, including liability to a "non-party," which lies at the heart of this action. The second test in *Terra Int'l.* is also satisfied. Therefore, the forum selection clause applies to these tort claims under federal law.

### B. Missouri Law

Applying Missouri state law, Plaintiff's claims are also subject to the forum selection clause. Plaintiff cites to *Jitterswing, Inc. v. Francorp, Inc.*, 311 S.W.3d 828 (Mo. App. E.D. 2010) for the proposition that "the existence of a forum selection clause in a contract that requires contractual disputes to be litigated in a specific forum, does not require tort claims between the same parties to be litigated in that forum absent precise language to that effect." (*Citing Service Vending Co. v. Wal–Mart Stores, Inc.*, 93 S.W.3d 764, 768 (Mo. App. S.D. 2002)). Defendant

argues that *Jitterswing* too narrowly interpreted *Service Vending Co.* and other Missouri case law. The Missouri Supreme Court ruled on the applicability of forum selection clauses to non-contract claims after the parties submitted their memoranda regarding this motion in *Reed v. Reilly Co., LLC*, 534 S.W.3d 809 (Mo. 2017). In *Reed*, the Missouri high court rejected an argument that the forum selection clause in question lacked "precise language," finding instead that:

> "[W]hether a forum selection clause that by its terms applies to contract actions also reaches non-contract claims 'depends on whether resolution of the claims relates to interpretation of the contract.'" *Major v. McCallister*, 302 S.W.3d 227, 231 (Mo. App. 2009) (*quoting Manetti-Farrow, Inc. v. Gucci Am.*, 858 F.2d 509, 514 (9th Cir. 1988)).

*Id.* at 811. The *Manetti-Farrow* standard utilized in *Reed* was also used by the Eighth Circuit as the "second test" in *Terra Int'l*. This Court determined earlier in this opinion that the facts of this case satisfy the second *Terra Int'l.* test. Moreover, the Missouri Supreme Court's reasoning in *Reed* melds here. *Reed* holds that where resolution of claims "would necessarily require an inquiry into the terms and enforceability of the agreement," the resolution "depends upon an interpretation of the agreement," and the forum selection clause applies. *Id.* As discussed above, the resolution of Plaintiff's claims relies on several terms of the Agreements. The forum selection clause applies to Plaintiff's tort claims under Missouri state law.

**Plaintiff, a third party, is bound by the forum selection clause**

Plaintiff is not a signatory party to either the 2009 or 2013 Agreements.[3] Nevertheless, Defendant claims, Plaintiff should be bound by the forum selection clause based on her close relation to the Levines and the Agreements. Plaintiff argues that enforcement of a forum selection clause against a third party is proper only when there is a "unity of interest such that the non-party and the contracting party are indistinguishable."

A third party will be bound to a forum selection clause only when the third party is closely related to the dispute such that it becomes foreseeable that it will be bound. *Marano Enterprises of Kansas v. Z-Teca Restaurants, L.P.*, 254 F.3d 753, 757 (8th Cir. 2001). This standard does not call for a "unity of interest" such that the third party and signatory party are "indistinguishable." Rather, the appropriate inquiry is whether the third party reasonably should foresee being bound by the forum selection clause because of its relationship to the cause of action and the signatory to the forum selection clause. *TLC Vision (USA) Corp. v. Freeman*, 2013 WL 230254, at *11 (E.D. Mo. Jan. 22, 2013).

Plaintiff's relationship to the cause of action is based entirely on her status as a third party beneficiary to the Agreements. A third-party beneficiary of a contract

---

[3] Plaintiff signed the 2013 Agreement as attorney-in-fact for the Levines, but was not herself a party to the contract.

is almost certainly subject to its forum selection clause.  *See, e.g. Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 210 n. 7 (7th Cir.1993) ("[I]t may be true that third-party beneficiaries of a contract would, by definition, satisfy the 'closely related' and 'foreseeability' requirements."); *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983) ("[The law of contracts] has long recognized that third-party beneficiary status does not permit the avoidance of contractual provisions otherwise enforceable.").  Plaintiff asserts that she is not bringing claims as a third party beneficiary, but is rather claiming that "Defendants owed her tort-based and fiduciary duties directly, and made representations to her directly, distinct from but in addition to those made to Ralph and Ora Levine." However, the FAC only references statements or recommendations made to the Levines *and* Plaintiff, always in connection with the financial advisory services provided to the Levines by Defendants.  All such services are governed by the Agreements.  Accordingly, as discussed above, Plaintiff's claims involve the same operative facts as would a parallel claim for breach of contract, and resolution of Plaintiff's claims necessarily relies on express terms of the Agreements.  Plaintiff's claims are inextricably entwined with the contract between the Levines and Defendants.

     Plaintiff's relationship with the signatories to the forum selection clause, the Levines, was extremely close, such that she should have foreseen being bound by

it.  Not only was Plaintiff a "specifically identifiable beneficiary" of the Levine's Estate Plan, she was so closely involved with the Levine's affairs that she signed the 2013 Agreement as their attorney-in-fact.  As such, Plaintiff was fully aware of the forum selection clause, and should have foreseen that the forum selection clause would bind her in any claims deriving from the Agreements.

Plaintiff's strategic omission of the breach of contract claim does not change the basic nature of her claims as those of a third party beneficiary, wholly dependent on and derivative of the contractual relationship between the Levines and Defendants.  Moreover, Plaintiff had actual notice of the forum selection clause in her capacity as the Levine's attorney-in-fact.  Therefore, Plaintiff is bound by the forum selection clause, even though she was not a party to the Agreements.

### Transfer to the Eastern District of New York

"When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause.  Only under extraordinary circumstances unrelated to the convenience of the parties should a [motion to transfer] be denied."  *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 62 (2013).  Defendants claim that no such extraordinary circumstances exist in this case.  Plaintiff does not disagree, but rather argues that *Atlantic Marine* has limited application to this case because

Plaintiff was not a party to the Agreements and therefore did not "bargain for" the forum selection clause, and could not have received any benefit of the bargain.

Indeed, the Supreme Court's reasoning in *Atlantic Marine* centered on the nature of a forum selection clause as a contractual term that "may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place." 571 U.S. at 66. But Plaintiff's assertion that her third party status exempts her claims from *Atlantic Marine* analysis ignores the "closely related" analysis this Court engaged in above. Plaintiff is bound by the bargain for the reasons elucidated previously. Although she may not have been involved in negotiation or even the decision to do business between the Levines and Defendant, she now brings claims which are wholly derivative of that contractual relationship. Plaintiff cannot sidestep the forum selection clause in the Agreements on which her claims are based. The forum selection clause will be enforced.

**Conclusion**

Defendants' Motion to Transfer Venue [Doc. No. 21] is GRANTED and this case is ordered transferred to the Eastern District of New York for all further proceedings.

Accordingly,

**IT IS HEREBY ORDERED** that this matter is transferred to the United States District Court for the Eastern District of New York.

Dated this 6th day of July, 2018.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE